Good morning, Your Honor. May it please the Court, Andrew Magwood for the plaintiffs and appellants, Ernest and Lila Merrill. Your Honor, the Merrills are entitled to a new trial to detry their substantive due process claims because the district court erroneously dismissed their substantive due process claims based on the case of Armendariz v. Penman. Armendariz is no longer good law, as the county apparently concedes. The county then says that there are three or more supporting reasons why the district court's reasoning, even though incorrectly based on Armendariz, should still stand. We, of course, disagree. I'd like to take a moment to discuss a few of the distinctions rather than going through them. Let me make sure that I understand here. The decision, to the extent that the decision was based on Armendariz, it may be defective, but you still have, if I understand it, you still have to show that you make claims. I don't think that that's necessary, Your Honor, but for the sake of argument, we think that there's a threshold. You automatically, what relief do you think you're entitled to? Well, this was on a motion to dismiss, a 12B6 motion, so the facts in the pleading were assumed to be true. So I think that we would be entitled to at least go back to that point and put on those same facts that were, that supported our substantive due process claims. What substantive due process claims were asserted in the complaint? Your Honor, the original complaint was very lengthy, and it details a history of deprivation of both property rights, as well as liberty interests of the Merrills by the counties. And that started immediately after the Merrills purchased the Dreamcatcher Ranch. And it started with the interference with lawful activity on their own property. The property had been graded, and this testimony was actually presented at trial, the property had been graded for nearly 30 years with no permits, and on all of these roads, the roads that were there, this is basically a seven-mile square ranch with about 20 miles worth of roads on it that are all private roads, the prior owner had graded those roads for 30 years with no permits, had passed through all the same roads. Immediately upon the ejection of a county supervisor's wife for trespassing on the ranch, the county began to... But this case is complicated by the heck issue. I have two comments about heck. One is that the county raised that at various times in the proceedings below, and lost every time, and didn't bring an appeal or cross-appeal. So those issues should be at rest. But we have briefed them, and to the extent that they are issued here, I have a few other points, which is, one, heck would never bar Mrs. Merrill's claims because she was never the subject of an arrest, and she never made any plea agreements. So as to Mrs. Merrill, heck is completely the opposite. It has nothing to do with it. As to Mr. Merrill, he pled to fish and game violations. The state of California is not a party to this action, and nothing... The important issue in heck is whether or not the Merrill's 1983 claims undermine the basis for the criminal conviction. They don't. But didn't the plea agreement encompass the grading activities? No, Your Honor. I don't believe so. I believe that the... I think you're referring to the Harvey Waiver, which allows the trial court to consider other charges in sentencing, but that doesn't necessarily mean that they're implicated. And besides that, heck would not bar... There's a huge panoply of violations, including things like the ambush of Mr. Merrill under the protectual meeting. This is a situation where the county had orchestrated his arrest, and in doing so, they called him, or through counsel, I don't recall which, and told him to come down to the county and we would discuss your permit process. The only reason they did that was to arrest him in a public place. Now, whether or not their arrest had legal basis, the manner in which they executed these... We aren't here as a trial court. That's correct. We are trying to review a decision of the court below. I am trying to understand, with respect to the heck matter, as to whether or not what happened in the state court was a vindication for you that allows you to sue under 1983. I'd like to know what the district court did wrong. Well, the district court was correct in saying that heck did not apply. The district court was consistent throughout saying that heck did not apply to this situation, so we're not disagreeing with the district court. Even to the false arrest claim? Even to the false arrest claim. That was raised orally during, I believe, the defendant's Rule 50 motion at trial. And the district court, Judge Ishii, at that point even said, heck does not apply here. So the sole basis for the district court's ruling was the Armendariz case? That's correct. And there were other bases. And the district court wrestled with this issue over and over again. Once having made his decision on the 12B6 motion, he mentioned, I'm restrained by that decision. So now I've got these cases and these claims which are substantive, but that's out. So I don't have any way to provide any relief for you. And the issue there is looking at this under an equal protection case rather than as a substantive due process, you still have to have somebody who was disparately treated. Substantive due process doesn't require that there's a disparate treatment. It requires arbitrary and capricious action, which is what this case was originally about and what they continuously tried to put on. But the district court then would say, but we don't have anybody else who was treated differently. For instance, the arrest allegation in the motion for summary judgment or adjudication, the district court said, hey, you don't have anybody else that was ever arrested in this way. And although I think it's unfair, there's no substantive due process claim to hang your hat on. And because there's nobody else to say that it was disparately treatment, then there's no equal protection claim. And you were propounding a class of one equal protection claim? It was. And the district court said, but in some of these factual bases for the equal protection claims, there wasn't even, you know, a single instance that the plaintiffs could put on that anybody had been treated differently. So just so I'm clear about what you're asking for in terms of relief, are you asking us to reinstate only the substantive due process claims? That would be my fallback position, Your Honor. I think that at minimum, they're entitled to try their substantive due process claims. What else? If you had your wish list. I believe that the entire case should be unwound. Unfortunately, all of these factual bases could be looked at under a procedural or a substantive. Well, you had allegations under the California Public Records Act. And so are you saying all of those should be reinstated, the First Amendment claims and all of those? That's why I'm asking you to narrow for us exactly what claims you think should be resurrected. Right. Thank you for that, Your Honor. No. I think that what we're asking is there are some claims that were adjudicated at trial. Those should be put at rest, whether or not it was a procedural due process violation to not give the merrills a driveway permit. Some of those things, I think they had a fair opportunity to present those issues at trial. But a lot of the claims were removed from the final draft of the jury verdict form, because the trial court could not find any way to put them in there that would actually offer the plaintiff's relief. So those, I guess my point is that. Well, that's hard for us to understand. Because if you could give us a list of the claims you think are still in contention, we could look at those. And what the district court did. I'm really trying to focus. I personally am not speaking for the residents. On what the district court did wrong and when the matter was presented to it where it made the wrong decision. So if you could go through the claims, that would be helpful. Certainly. The arrest itself and the circumstances around the arrest were dismissed early on. All of the issues about the grading of the ranch roads. What are the legal claims here? Well, they're all substantive due process claims under Section 1983. And they're all vindicating rights that the county ordinances, whether right or wrong, were arbitrarily applied to the Merrills for the sole purpose of getting back at him for the hurt feelings of a county supervisor's wife who was ejected from the property. There was no basis. Your Honor, I would point out, for instance, there were trumped up charges. There was no way for the Merrills to obtain relief under the situation that they ended up at in trial. The perfect example of this is where the county stopped the Merrills from completing their permitted septic system. They had proper permits and the work on the septic system was being done properly. The county came out after the arrest and said, stop the work. Don't even fill in the septic system. Leave it there. They then went out and got the fire marshal and brought him back to the property and said, look, isn't this a violation? The fire marshal said yes. Now, the fire marshal at trial said. You had a trial on this. He had a trial, but there was no possibility of relief, Your Honor, because you can't. There was not one instance of any other person having that kind of manufactured charge brought against them. In fact, the district attorney testified at trial and said that in his entire career, he had never had any further, any other arrests on land use violations. So it's very difficult under an equal protection claim to win on anything because you had, the Merrills had the burden of showing that they were desperately treated. Let me ask you this question. You're saying basically, then, that they've been able to argue something through process claims. They've been able to show that they didn't get the process they were entitled to. Forget about how anybody else was treated. This is what happened to us, and it was wrong, is what you're basically saying. That's exactly correct, Your Honor, and that's what the district court said. He said that's what you have, but I can't give it to you because of Armendariz. If you had those claims, if you had that substantive due process in the case, then we could have a jury form that the jury could actually give you an award. Did this, what I'm not understanding, I'm sorry, because I, this case, Armendariz was overturned in 2005 or thereabouts. So I'm not understanding when the district court, and this appeal was filed in 2008, 2009? The timeline, my understanding. Was the district court ever confronted with the fact that Armendariz is no longer good law? Yes, Your Honor. And what did the district court say then? The district court said that, well, actually, the district court raised it on its own in its post-trial motion and said, nobody raised this, but the Ninth Circuit just came out with the Crown Point case, which was issued after the trial, but prior to the issuance of the district court's final decision, said, nobody raised this to me, but I see that Armendariz is no good. But I'm not completely convinced because the land use cases, the takings portion of the Merrill's claims, it was not right. We're not saying that the, I would agree. Okay. You're saying that the district court raised this on its own motion during the post-trial motions? Yes, Your Honor. On its own? And did you ever argue, when did you argue that it was wrong on that, in not? There was a motion to, I believe there was a motion for reconsideration after that, but that was a final judgment, an appealable order to the court. And in any case, it was something that the district court raised on its own. I don't think that anybody knew that that Crown Point was going to come out or the implications that it would have on this particular case. And I see my time is just about up, but I would be happy to respond to any further questions. The only question I have is this. The other side is basically saying, you got all the evidence in anyway, results just stay the same. What do you say to that? Well, Your Honor, the substantive due process claims were stricken from the complaint, and Judge Ishii gave very clear direction that substantive due process was out for the rest of the trial. That happened three, four months after this case started. There was about three years of litigation and a three-week trial. I would say that nobody has a fair trial if they're told that you can't proceed on certain claims. That shapes everything. It shapes discovery. It shapes what witnesses to call. It shapes how you're going to draft a motion in limine. It's going to shape how you propose a verdict form. So for them to say that, oh, we had three years of litigation to develop these, why would they do that? They were given strict instruction, and the law at the time seemed clear. They shouldn't have been forced to look into a crystal ball and guess that this would change in the future. They were dealt the hand of cards. They played them the best they could, and later they found out that they should have been able to play more. The problem is, I mean, if you go back, the risk is that you reopen the whole thing and have an expansive trial. So I guess I was just trying to figure out what were the issues, the finite set of issues under substantive due process that would be remanded, and I still don't have a clear answer to that. You've more than used your time. Thank you, Your Honor. If you have any questions after we hear from your adversary, we'll let you answer them. Thank you. May it please the Court, members of the Court, good morning. My name is Derek Cole. I represent the county and the individually named FIDNATs. Two main points of my argument. One is substantive due process, and then after that I'll address the Heck v. Humphrey issue, but I think I'll get to the point that the Court was asking of counsel. The only issue here is the effect of Armandiris or the effect of the undermining of the Armandiris line of cases. So I want to be very clear that our position is that if this Court does remand, and we certainly do not think remand is appropriate, as I'll discuss, but if there is a remand, it should only be as to the substantive due process issue as was pled in 2005. And that's... So what claims, in your view, what claims were encompassed in the substantive due process allegations as they were pled? It was a chain pleading, and basically what you have in the pleading is a set of common facts, and then you have six cause of actions in the initial complaint. Count two alleged substantive due process. Count two also alleged the taking and procedural due process. Count three alleged equal protection. When you go back and you look at the actual phraseology of the complaint, you see that these are all just basically the same claims dressed up as... But complaints don't stand alone. You have discovery. You have interrogatory. So as fleshed out, what were the substantive due process claims? Well, as fleshed out... Well, it's going to take me a second to answer that, Judge Rawlinson, because quite frankly, in my view, the complaint had a considerable evolution. When you read the complaint, what Mr. Merrill was saying is that I was not able to develop my property. He was speaking as if he were a subdivider. He threw out this ridiculous number of $100 million, and the only way you get to $100 million is if you're putting houses out there, not just one house in the middle of a 400-acre property, but you're subdividing. If the substantive due process claim was that he was prohibited, I mean, in an arbitrary manner from developing his property, was that issue litigated before the district court? That specific issue was not litigated under the rubric of substantive due process. But if you read the trial transcripts, all of these conspiracy theories that Mr. Merrill alleges, that was what the whole case was about. And all due respect to counsel, who is appellate counsel, I was there. But the problem is it's important that those issues be litigated in the appropriate instructions, because just putting those facts out there without guidance to the jury, that the jury is to look at those facts and see if there was a rational basis for the county's decisions, won't get to the root of the cause of action. And I'll respond to that, Judge Rollins, in this way, and that is to say, after Crown Point came out in 2007, this court decided the Shanks case and the North Pacifica case. Now, I acknowledge that those cases came up after a 12 v. 6 dismissal. And in those cases, the court said, even on the facts as alleged, we're not going to send it back to the district court because you haven't alleged a substantive due process claim. Now, here it is a little different in the sense that there was a trial, but my point, and Judge Collins, you summarized my position very well, my point is nothing is going to change if you send this back to the district court. The fact of the matter is, and this was not contested at trial, Mr. Merrill, when he built his mobile home, literally cut out the side of a hillside, pushed 3,000 cubic yards of fill down an embankment, didn't bench the mobile home pad, didn't compact it. This road, this so-called road that he said had existed, when it previously existed under the prior owner, it was simply a ranch trail. It really was not a road. And the trial record is unambiguous that Mr. Merrill created a road system. He created roads, not a road. He took the existing trail and ran Cat D8s and D9s and widened it so that passenger cars could go through. Then he created new roads and new access to the parcels and to the public road that existed at the northeast part of his ranch. And he did all of that, and I think this is a critical fact. This evidence is undisputed. He made $5 million selling off individual portions of the ranch. And the point here is that he was selling this property so that it could basically be bought. And he was selling it for profit. And he was improving this ranch so that he can do that. Without the permits? Without the permits. All right. Well, can you help me with this? Yes. With this Armanderas problem. Okay. We get the 2007 case. How does this come into the litigation in the district court? What did the district court rule? Procedurally. This is important to me if I'm speaking for myself. And Judge Schroeder, the chronology is this. Mr. Merrill filed this action in the beginning of 2005. We moved for dismissal. Judge Ishii dismissed the case, or he dismissed the substantive due process claim under Armanderas. That order was entered in August of 2005. We went to trial in 2007. The jury rendered a verdict for Mr. Merrill in July. There was a motion for a new trial and a motion to amend the judgment. That was filed in September. In November of 2007, so about three months after the trial, Crown Point comes out. And then the judge sort of obliquely recognizes Crown Point in a footnote. But the motion had already been filed and fully briefed before Crown Point came out. So the plaintiff never called Crown Point to the attention of the trial court to say this requires you to rethink this? No, no. So we don't really have any ruling on the points that are now being raised here? Judge Ishii was not specifically asked by the plaintiff either through a separate motion, if one could have been made, or through a motion for reconsideration. But here we are now, and we have to apply the law as it exists now. So where does that leave us? Well, and I'll get back to the point I was making earlier, which is a remand is going to be wasteful because the facts are not going to change. And I'll address two issues. Then first issue is the lack of a property interest. And then second, the absence, or the, sorry, I'm stating the opposite of what I intend to say, the existence of a rational basis. There is no way, if you remand this case, that Mr. Merrill could show that he had the requisite property interest to support a substantive due process claim. You can't move thousands of cubic yards of dirt for a road, for a mobile home pad, and not require a grading permit. That is basic elementary county government 101. Well, but the problem is it was dismissed on a 12B6. And on a 12B6, we don't really look at what happened in the trial. That's the conundrum at this point. Well, and I would address that by, I would ask the courts to go back and look at Shanks and North Pacifica because there, even though, again, those came up on a 12B6, the district courts had used Armandiris and its progeny to basically dismiss the substantive due process claims. And so the plaintiffs there said, hey, wait a second, Crown Point has been decided. So they came to this court and said, please just send it back. And this court said, no, you still haven't made out the elements of a substantive due process claim. In the pleading, but in this case, it was pled, though. That's the difficulty I'm having. The words were pled. The words were pled. The problem is, and this is my point, if the court is going to send it back, you — Would it make sense, let me, because I am just troubled by the fact that we're having to sort through all these claims and all this stuff on a fairly simple questions that the trial court would probably understand much better than we. We could get this all wrong. Would it make sense to do a limited or remand to ask the district court to consider the effect of Crown Point on the substantive due process claim or the — Well, I will stand on our position that you don't need to do that for the reasons that are mentioned in my brief. But I will say that if the court does that, my concern is we have three weeks. I know all of the evidence. It has all been — it's all come out. It's not going to change. What I don't want to go do is have to spend another three weeks in trial on the same point. But the district court — if the district court agrees with you that the evidence won't change anything, then the district court can simply say that and give it back to us. And I guess that's my question. If you did that, would the district court simply make a threshold determination or — I mean, would that be a jury trial? I guess, could the — and then, Nate, could I make a motion for summary judgment on that? The district court is much more familiar with this case than we are, knows the record much better, you know, knows what it meant when it threw the substantive due process claims out, because your argument was they were all the same. And if the district court agrees with that, then you win. If the district court doesn't agree with that, it will do something different. But — We understand you don't want to have another trial. And that may — and you may be right that there shouldn't be another trial. It would just be nice for us to see a ruling from the district court that explains that that's the case. And I suppose, you know, we could do — we have a lot of options open to us. We could frame this so that we get an answer as to the extent to which each claim is affected by that case and then keep jurisdiction of any additional appeal, I suppose. Well, if that's where the court goes, then I — I don't know. I'm just — We would stand on our position. But if that's where the court goes, we understand. And I would, before I conclude, ask the court. I believe that there is ample grounds on a Heck v. Humphrey basis to dismiss this case. Do you agree with the policy? You lost that below, didn't you? I did lose that below. But the point is, we did not make a cross appeal because we're not enlarging the judgment. We're not changing the judgment. The judgment was in our favor, and at least my understanding. And I hope I'm not incorrect. We understand. Yeah. So I was simply raising it. On the — what happened? What was the final? Here's what happened. Mr. Merrill, as part — there were about 15 counts. Thirteen or 12 of them were related to grading. Two of them were fish and game counts. Mr. Merrill pled no contest to the fish and game counts, and the county grading counts were dismissed. But it's important that they weren't dismissed in the sense that he had proven that they were wrong or that he was getting something in the nature of an acquittal. They were dismissed pursuant to his agreement. And I refer the court to page 112 of our supplemental excerpts of record, tab 20. That is his plea agreement. That was in evidence. And in it, he specifically agreed to submit grading plans to the county, not only for his past grading, but for his future grading. So he agreed to rectify the grading work that he had done without a permit and to process those applications with the county. He also paid the county $5,000. But if he went ahead with his substantive due process claims, that wouldn't affect the guilty plea. It would because of the package. I like to think of his plea agreement as one big package. It's not simply he plead no contest to two fish and game. He plead no contest to two fish and game counts in exchange for him agreeing, as part of a plea agreement, he would rectify his grading. And so if the court were to allow it. But that grading also was part and parcel of the fish and game allegations because of the, what, pollution of the water. They're all related, Judge Rawlinson. They're all related, although they were separately. The grading counts were under the Madera County Code grading ordinance, Chapter 14. And my point is that if he can show through these various conspiracies that he's alleging that this was all a ruse to, because of the supervisor's wife who lived next door, then he would effectively be saying that he wasn't required to have grading permits. That that was all one big concoction at the behest of the supervisor. Well, he had the opportunity to litigate that question because to show a defense in his criminal action, he could have simply shown that no grading permit was required. Well, there's a difference between whether or not a grading permit is required and whether or not once you graded, you polluted the waters. Those are two separate questions. You could be convicted, even if you had a proper grading permit, you could still be convicted of polluting the waters, even if you had permission to grade, if you graded improperly and polluted the waters. That's a whole, that's a different infraction. Let me ask you a question. How do you live, how do you live close, next door to 4,000 acres? I'm sorry. I said this was a 4,000 acre. Well, okay. She was a neighbor. Sure. I live next door to 4,000 acres. Let me explain the situation to you, Judge Collins. I don't know how familiar the court is with Madera County, but just to give you a picture, you're heading towards Yosemite, and where Mr. Merrill lives or where the ranch is, is as you go up Highway 41 towards Yosemite, there's a Road 200 that breaks off. There's a new casino in the area, and it heads to a town called North Fork. And the ranch starts at this Road 200, but then it goes, as counsel mentioned, up about seven miles to near the town of North Fork. And so at the very northeast corner of Mr. Merrill's property, there is actually a subdivision, and it's like any subdivision here, and that's where Mr. Gilbert is. So at some point, it neighbors that property. At that very edge, it does, and Mr. Gilbert's house is about a third of a mile. That's what's in the record. That's all I have. Thank you. Thank you. Are there any further questions? Okay. Thank you. The matter just argued is submitted.
judges: Collins, Schroeder, Rawlinson